The next case this morning is 523-0522, People v. Beard. Arguing for the appellant is Omar Jalil. Arguing for the appellee is Adam Rodriguez. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, everyone. Good morning, Your Honor. I'd like to welcome all of the non-video participants to this argument as well. We're here on People v. Michelle Beard, and I understand that Mr. Jalil, you are representing both Michelle Beard and another defendant that's got a similar argument in this case. Is that right? That is correct, Your Honor. Okay. Well, this case is People v. Michelle Beard, so we will begin with Mr. Jalil in that regard, if you're ready. Thank you, Your Honor. May I proceed? Yes. Mr. Rodriguez, Honorable Justices, may it please the court. My name is Omar Jalil, and I represent Michelle Beard, who is seeking reversal of the trial court's denial of her joint motion to suppress. The trial court erred for four separate reasons. First, the arresting officer lacked probable cause to search the vehicle. Second, even assuming arguendo that probable cause existed to search the vehicle, it did not extend to the plastic mailing envelope that was discovered in the vehicle. Third, the officer conducted an unlawful frisk of Mr. Woolfolk that transformed the Terry stop into a full-blown arrest that required probable cause, which was lacking in this case. And finally, the arresting officer improperly extended the traffic stop to conduct a drug interdiction investigation. The officer claimed that- I want to begin, Mr. Jalil, I want to begin with one of the statements you just indicated was an issue, and that's the improper extension of the traffic stop. Yes, Your Honor. This is Michelle Beard's argument. Does the argument of Michelle Beard go to the extension of the stop when she's not the driver? Well, Your Honor, I would argue that her Fourth Amendment rights were also violated by the stop being improperly extended. Didn't she have the right to leave if she wanted to? I mean, Your Honor, she was in the middle of the interstate. She stated to the officer that she's not familiar with the area. It was nighttime. I understand the circumstances, but as a matter of fact, she wasn't the driver. And so I'm wondering if she has the legal right to argue the extension of the stop. I mean, nobody- I couldn't see in the record where she was told she couldn't leave. Well, she was told by the officer to stay in the car when the officer told Mr. Woolfolk to exit the vehicle. Is that the only thing she was told that would, in your opinion, make the stop custodial? Well, I would just say the totality of the circumstances, including the time, the location, and the fact that her boyfriend was taken out of the vehicle, all of those circumstances would leave a reasonable person to believe that they were not free to leave in that situation. And based upon that, I would think that violation would extend to her as well. Okay. I'm sorry to have interrupted you. Go ahead. Of course, Your Honor. The officer claimed- testified that he had basis probable cause upon the fact that the vehicle reduced the speed from 76 miles an hour to 71 miles an hour. A concept of proxemics, that the fact that the vehicle that was being driven was a rental vehicle on an interstate highway, and that when he made contact with Ms. Beard, she appeared to be nervous. None of these factors alone or in conjunction made it more or less likely that the officer would be- would be able to find evidence of contraband in the vehicle or evidence of a speeding violation. The officer also stated that probably he had probable cause based upon him smelling the smell of unburned cannabis and the virtue- the virtue dispensary container that was in the center council. That virtue container was in plain view, was it not? It was, Your Honor. It was in the- in the center council. The officer asked Mr. Woolfolk about it. Mr. Woolfolk picked it up and showed it to him and that it was- stated that it was from a dispensary. So, now we have a dispensary jar of cannabis that's in a council that's now accessible, where the law says it must be inaccessible, correct? Well, Your Honor, I would state that- Redmond states that the issues with cannabis- that based upon the changing circumstances of cannabis law, the legal use and possession of cannabis is generally prohibited from being prosecuted, except for certain conduct that this does not fall under. Redmond stated that that the violation of having cannabis accessible is not in and of itself a violation, but more what I would state is that- Well, are you saying Redmond said that having accessible cannabis is not a violation of the law? It's not a class-A misdemeanor? It's stating that in and of itself, that cannabis is prohibited- the legal use and possession of cannabis is okay. The issue as to whether- what constitutes an authorized container has not been decided by Molina, or hasn't been decided by Redmond, but will be decided by Molina. And I would argue- Well, I'm assuming that the container was authorized, that it was okay. It was purchased from a dispensary. My question is accessibility. It has to be inaccessible under the law. And I would state that the accessibility argument is more in regards to preventing somebody from consuming cannabis. There was no testimony whatsoever in this case that any drug paraphernalia was found in the vehicle, that there wasn't even a lighter in the vehicle, that there was no way for them to actually ingest the cannabis. I'm going to stop you there. So you're saying that accessibility is related to the ability to smoke cannabis? Is that what I'm hearing you say? I would say that they go hand in hand. It's the same type of situation with an open container of alcohol in the vehicle. The accessibility of it is that it's in an unsealed condition, and that it can easily be consumed. But we're assuming that this is sealed. We're assuming that it's closed. What if it's- I mean, couldn't it be consumed? And wouldn't- I mean, wouldn't it be accessible in a center console though? I mean, isn't it accessible for consumption there? Not without any means to consume it. At that point, it's just sitting there. They couldn't eat the cannabis. They would need to burn the cannabis to be able to have any intoxicating effect on it. And just sitting in the center console, in and of itself, should not give the right to the police officer to have a blanket search of the entire vehicle. And that goes to my second point, that even if probable cause existed to search this vehicle, it didn't extend to this white postal envelope. But under your theory, aren't you negating the fact that the officer could- couldn't the officer have charged them with a Class A misdemeanor? I understand you're arguing that it's not probable cause, but you're suggesting that to have accessibility, you have to be able to have a mechanism to smoke the cannabis. So you're suggesting then that the officer couldn't have charged them with a Class A misdemeanor? Is that what you're suggesting? I think he could have charged them with it, but I don't know if there could be a finding of guilty based upon that. Well, that takes the position that an officer can charge anything for which he has probable cause, but it's left to a fact finder to determine whether it's guilty or not. I mean, anything for which there's probable cause can be charged. Again, I would state that even if probable cause existed, the probable cause did not exist to searching the postal envelope. So the rule on probable cause is that the officer can search the vehicle for anything that is contraband of the kind that he observed. Would you agree with that? In other words, he observed cannabis in a jar. He could search for cannabis, assuming he had probable cause. Well, I wouldn't state that he could search for accessible cannabis because that would be the only violation, not the simple fact that there was cannabis in the vehicle. That is not in and of itself a crime. The only thing that potentially could be a violation is that the cannabis was in an accessible condition, and that would be what he would be able to search for. And when he found the plastic envelope, he didn't testify that he knew what was in it based upon his training experience, and specifically says in the video, what in the world is this? So he didn't know what was in it. So there shouldn't be a basis that a postal envelope that could contain anything in it would contain accessible cannabis when the police officer needed to tear it open, and then tear open other garbage bags inside of it, which from the pictures, it looked like there were multiple garbage bags. Only after that, he was able to discover what was inside of it. I would argue that that postal envelope could never contain accessible cannabis, based or a violation of a speeding law. So there was no reason why the officer should have been able to have the authority to search that envelope, even if there was probable cause to search the vehicle based upon accessible cannabis, that it would be limited to looking for accessible cannabis only. And that would be something that's easily accessible, not something that is packaged and nobody knows what's in it, including the police officer. When you try to refine the search to the term accessible, as opposed to the case law I've read that talks about contraband, generally, do you have any case law that pertains to any kind of Well, Your Honor, initially, I would state that we're not talking about contraband here. Contraband is something that's illegal to own, illegal to possess. Cannabis, Rudman makes it clear that cannabis is no longer contraband. And so it's not like we're talking about heroin or cocaine, which there's no right to possess whatsoever. You have a right to possess cannabis. You have a right to use cannabis. You have a right to use cannabis or be impaired under the influence of cannabis. But to follow up on Justice Cates' point that she's making, is there case law perhaps related to alcohol, which is legal, that would indicate the issue of accessibility and how or how not it may be applicable to probable cause? Well, I mean, I would just highlight to Seminole case of United States v. Ross that limited the search to just the suitcase and not the entire vehicle. That shows that specifically that the object of the search is where it can be located, not just anywhere in the car. And there was no way that that plastic envelope would have accessible cannabis in it. There's nothing in his testimony that states that he thought that it contained cannabis or that it contained even contraband or anything illegal. He said, what in the world is this? Clearly showing that he had no idea what was in it. All he testified to, it was a white envelope with a plastic wrapping and it had some weight to it. But he had no idea what was in it. And without him having even a reasonable suspicion that that could contain accessible cannabis or even cannabis, the probable cause to search the vehicle doesn't extend to areas in the vehicle where the object of the crime cannot be found. Well, we have case law that allows the officer where there's probable cause to search the vehicle to open bags in the trunk. Are you familiar with that? I would agree. But I would think that those cases are distinguishable because those cases, the object, the backpack could have for contraband. We're looking for an item that's legal to possess. And I think that's distinguishes it from all these other cases that involve contraband. We don't have contraband. We have a legal substance, a legal product that could legally be purchased at a dispensary. And Redmond has stated that it's not contraband. And because it's not contraband, it should be treated not as a narcotic like it used to be. And now it should be treated as a substance that's legal to possess, illegal to use. And that's the reason why it's... Alcohol is legal to possess. And it's legal to possess in a vehicle under certain circumstances. It can't be accessible. So why can't we use the definition of accessibility that's used in the alcohol cases to these cases? Because you can use alcohol that's accessible in a vehicle for its intended purpose. You can't use cannabis in a vehicle without some sort of paraphernalia for its intended purposes. It has no value when there's not a way to ingest it. Alcohol, all you need to do is open the bottle, open the can, and it's accessible. And at that point, all you need to reach is all you need to reach over into the passenger side, pull it out, and start drinking it and consuming it. Cannabis is not like that. You can't just reach over and start eating cannabis and get the intoxicating effect on it. And because of that, I think it's a fundamental difference of why it's not accessible if it can't be used. It'd be like anything else in the car that can't be used. Okay. Your time has expired for right now. Let me ask Justice Scholar, do you have additional questions at this time? Not at this time. Justice Moore? No questions. Okay. Mr. Jalil, you'll have some additional time after Mr. Rodriguez argues. So let's hear from the state from Mr. Rodriguez. Mr. Rodriguez, why don't you address, after you say hello to all of us, why don't you address the accessibility issue? Absolutely, Your Honor. Good morning, Your Honor's counsel, and may it please the court. In this case, the trial court properly denied defendant's motion to suppress evidence for the search of the rental vehicle supported by probable cause. And Deputy Collins' conduct didn't otherwise offend the protections of the Fourth Amendment. I asked you your question, Justice Gates, regarding accessibility. There are particular and significant, important regulatory and statutory differences between cannabis and alcohol. Unlike cannabis, alcohol's legality is not conditioned on its amount, and Illinois law does not require alcohol to be transported in an odor-proof container. Defendant's comparison of alcohol and cannabis based on accessibility is not only nonsensical, but it misses the mark entirely, because under the statute's plain language, it ignores the separate requirements that the cannabis needed to be in an odor-proof container, which the evidence conclusively establishes it was not, and also that it needed to be inaccessible from any either passenger or driver in the vehicle, which the body cam footage and Deputy Collins' testimony establishes was directly in the center. Therefore, it was both, not both, it was actually in violation of all three of the elements of section 11-502.15b. So the argument- We don't know when the cannabis jar was opened, but the video clearly shows it was closed when he showed it to the officer. I actually don't think, well, I would say it's questionable whether it was closed, Judge. If it was closed, I would also say that you wouldn't be able to smell it if it was in fact a resealable, closeable case, because the statute indicates either it's sealed with some sort of tape or something to indicate it's not been opened or resealable in which it has a capacity to be tightly shut up and the odor will not emanate from it. Also that the characteristic of the container is that it is odor-proof and also that it is not readily accessible. And in this case, Deputy Collins testified, and as borne out by his body cam footage, within a very short amount of time of approaching the vehicle and speaking with the defendant or the defendants, he identified the odor of cannabis and Co-Defendant Woolfolk held it up and he made a reference that that needs to be sealed and Co-Defendant Woolfolk made some to the effect of, oh, I didn't know. But therefore, based on that information, we can, you know, conclude that not only was it not sealed because odor is emanating from it, it was also readily accessible in the center console. Let me ask the question a different way. If perhaps, let's take the odor aside for a moment, all right? If there's a sealed container, you're stating that it's considered accessible in the center console, is that correct? Accessible to the passenger and driver as that sort of condition of the statute. Had it been in the backseat, would that have been accessible? No, absolutely not. Because accessibility, as indicated by the statute, anchors it to the passenger and the drivers of the vehicle. You know, to use an analogy regarding alcohol, you could go ahead and have alcohol in a sealed container, you know, in your front seat or in the backseat, but that statute focuses solely on it not being open. Here, we have separate, distinct considerations about the odor not emanating and also it not being accessible to either the passengers or the driver. So if it had been put in a trunk, it had been put in the backseat of the vehicle, then absolutely we'd be having a different discussion. But that's not what we have here, Your Honor. We have the exact opposite where the defendants just sort of blatantly admitted that they were possessing this cannabis within, you know, hand's reach of both of What about the notion, though, that it couldn't be used? Does that hinder accessibility? Not at all, Judge, because under Section 11-502.15B, it's not concerned with the consumption of it, it's concerned with the transportation. And this sort of gets the defendant's entire erroneous argument. He engages in a discussion about that the cannabis was legal to possess, that it was a small amount. Those issues are absolutely irrelevant to the consideration we're dealing with on appeal here. The question is not whether the cannabis was legal to possess, whether the amount was legal to possess, it was about whether it was being properly transported according to the tenets of the statute. And as the evidence and the testimony established, it was not. Thank you. Your Honors, yes. Your Honors, I did want to discuss Redmond since my friend on the other side took a bit of time to discuss it. Redmond doesn't affect the outcome of this case. In Redmond, the sole issue before the court was whether the officer had probable cause to search the defendant's vehicle after detecting solely the smell of burnt cannabis. Our Supreme Court held that the smell of burnt cannabis standing alone was insufficient to provide probable cause to search a vehicle without a warrant. In contrast to Redmond, in the instant case, not only do we have the separate distinction of detecting the odor of raw cannabis, but we also have Deputy Collins' visual observation of the unsealed non-odor-proof and readily accessible container, indicating a violation of the statute governing the transportation of adult-use cannabis in a vehicle. Mr. Rodriguez, I have to tell you, I'm not buying the non-odor-proof jar because I think there's an alternative explanation, and that is that they could have bought the cannabis, they could have opened it up, looked at it, and closed it. They can't reseal it because now the seal has been broken. But I don't see anywhere in the statute where it says you can't open your cannabis and close it again. That's going to emanate potentially the odor of cannabis if you open it up. So you can open it, you can close it, and still have a resealable container that complies with the statute. So I'm not buying all of this, the seal was broken and it was in an unlawful container. We don't know any of that based on the record that I've reviewed. Do we know any of the specifics about this container? We don't, Your Honor, and to address that point, you know, that was the defendant's burden. This was the motion to suppress hearing that he filed, it was his burden, not the people's, so the record's actually silent on that point. Well, this was a very interesting motion to suppress because the state allowed the defendant to stand on the records, and then the state really put everything on. I would acknowledge that the trial court permitted or found that the burden had shifted, which normally is not the proper course for a motion to suppress hearing. But to your point, Justice Gates, I think the issue critically is whether or not, in this hypothetical, they opened the cannabis and smelled it and said, this is great, and then, you know, walked away or just put it back down, then they would still have been required under the statute to have it inaccessible in a place. And I think that is ultimately, you know, what defeats the defendant's claim, because you have these separate requirements. So to the extent you even want to acknowledge that it was sealed and it was in an odor-proof container, they were still in violation of that accessibility requirement. If they open it and put it in a bag in the back, then we wouldn't be having this discussion and we'd be dealing with perhaps other issues. But most certainly, defendant didn't comport with those requirements of the statute as the evidence and testimony established. I do want to note, you know, whether you look at this under the framework of Redmond, whether you want to put aside the discussion about the odor alone, Redmond still indicates that under a totality of the circumstances analysis, the detection of the odor of cannabis, whether raw or burnt as was the sole issue discussed in Redmond, may still be considered as part of one factor in the totality of the circumstances PC analysis. It just cannot be the sole factor, which is what Redmond dealt with. Here, we have the totality of the circumstances supported the determination that there was probable cause to search the vehicle based on all of the testimony and evidence presented regarding the inconsistent statements, the observation of the unsealed jar, where it was located in the vehicle, the defendant's contradictory statements, defendant Beard's furtive glances looking down at the location the contraband was ultimately identified. So most certainly... Wait a minute. You're going a little too fast for me. What statements were made by the defendant that suggested there was a criminal activity at foot? So the statements involved both co-defendants. So Ms. Beard did not make any statements saying that there was illegality. Under a totality of the circumstances analysis, in this case, we would look at all of the factors that occurred. And as Deputy Collins asked co-defendant Wolfhook to get out of the vehicle and speak with them while he was performing a warrant check and a license check, he asked him questions, which provided a further suspicion or that there was perhaps criminal activity. And that, to the point of defendant's argument that it impermissibly extended the search, it didn't because those actions are absolutely permissible and don't offend the Fourth Amendment. But in the course of those discussions... Those I think we'll discuss under Mr. Wolfhook's case. I don't see how Ms. Beard, who we're here on today... In fact, I think the issue is whether the activities of the officer as it relates to her co-defendant unjustifiably extended the seizure of the vehicle as to Ms. Beard. You know, what was going on in that car that she had to sit there on the side of the road waiting and couldn't leave? What was going on? I mean, how much time elapsed? Do you know? I believe, Your Honor, in regards to when co-defendant Wolfhook... Are you speaking about when co-defendant Wolfhook was in the vehicle? How much time was the total stop? Sure. If you give me one moment, I think I can actually give you that answer. The video itself was about, I want to say, an hour and 20 minutes. Much of it was ultimately not played at trial. So we had an hour and 20 minute stop. Well, the recording of the video, Your Honor, not the stop itself. There was subsequent activity. So it could have been longer. So it could have actually been longer. So it appears Deputy Collins approaches the vehicle at two minutes. There's, you know, discussion. There's all the observations regarding it. And then he re-approaches the vehicle, performs the search. And it looks like right around the 19 minute mark, he discovers the methamphetamine and the fentanyl in that purple wrap surreptitiously hidden location. And then at that point, the defendants were placed under arrest. Okay. So put that in simple terms for me. How much time elapsed? So it looks about 17 minutes in total, Judge. And in the course of that conversation or in the course of that traffic stop, information was learned throughout the way, throughout the course of performing a warrant check, performing a license check, speaking with the defendants in the vehicle. And based on that information, following the reasoning of this court's case in As that suspicion increased, it necessarily required Deputy Collins to engage in further investigation of this circumstance up to the point of the arrest. Let me stop you there. That was related to Mr. Woolfolk, correct? There was no, I think you said, you said he had some furtive glances and whatnot. But as to Ms. Beard, was there any behavior that raised suspicion as to her during that time period? Yes, Your Honor. So initially she wasn't able to provide the, she wasn't able to provide the rental agreement of the vehicle. And then when Deputy Collins returned to speak with her after having initially had Codefendant Woolfolk in the vehicle, he began asking her questions regarding what the purpose of their travel plans were. She provided inconsistent and contradictory statements to Deputy Collins. And when he indicated to her that he suspected and had probable cause to believe a crime was being committed, he was going to search the vehicle. She began, you know, these multiple furtive movements, looking down. Her behavior and body language was also incredibly nervous. I think more nervous than, you know, a regular person would be through the course of a traffic stop, which is what Deputy Collins testified to. And ultimately the location where the methamphetamine and phenol was found was exactly the location in, near the floor of the passenger seat where Ms. Beard was located. The video doesn't show that there were only furtive movements. The video shows that she was looking around the car completely. Do you agree with that or not? I wouldn't judge. There's actually, I think, multiple distinct ones. There is one where he asked her to, I think, locate something. And so she looks around, but the first time he asked if there's any contraband, it's very clear in the record that she looks down at her feet and then begins looking around. So there's distinct furtive glances that I would respectfully disagree on that part. Okay. He doesn't mention the chicken that she's eating in the car either. No, certainly judge, because that's an innocuous fact. And under a probable cause analysis, Deputy Collins' assessment was based on a totality of the circumstances, taking into account the possibility of the probability of maybe innocent conduct, but he wasn't required under governing case law to explain away every innocent factor before determination that probable cause was made. Well, he had already decided to search this car before he even approached Ms. Beard, didn't he? Isn't that what he told Mr. Woolfolk and the car? No, Your Honor. So I believe right at the two-minute mark, three-minute mark, upon observing the jar of cannabis and the defendant's admission that it was open and accessible to them, you can hear him make reference to the fact that he's going to perform a probable cause search. And throughout the entirety of the video, that is a statement he echoes repeatedly to co-defendant Woolfolk, to the assisting officer who arrives after Deputy Collins exit his vehicle, and when he meets with Ms. Beard upon returning to the vehicle. He establishes that it was probable cause. But that's my point. The minute he saw the cannabis, he decided he was going to make the search. So everything else that we've talked about is really ancillary to when he decided he was going to search that car. In fact, that's why he called the K-9 unit. So certainly I think under a determination they had probable cause, the fact that he went through further investigation to identify these issues is not improper. All the actions and information he learned occurred throughout the course of otherwise permissible actions that don't offend the Fourth Amendment. So the fact that he identified probable cause at that early instant, based on the Class A arrestable offense misdemeanor, doesn't mean that he couldn't have engaged in further activity. And that activity was otherwise proper and conformed within the context of what is allowed for officers to engage in during a traffic stop. He's not required to tell them, hey, I have probable cause. No, but he does not have the right to unjustifiably delay the search, does he? No, Your Honor. And I would respectfully push back on that contention because there was no improper extension. All of the information that was learned- He didn't immediately search the car. No, he didn't, Your Honor. Instead of searching the car, he takes Mr. Woolfolk back to his car and he leaves Ms. Beard sitting in the vehicle without anybody there until the officer arrives. Yes, Your Honor. And in the course of that interaction in the squad car, he's performing a warrant check. He performed a license check and identified that co-defendant Woolfolk had an invalid license in Illinois, yet had a license in Indiana. So as he's interacting- In addition to that, for writing a warning ticket, he's not even writing a violation. He's already told them he's going to write a warning ticket. And we'll get into this with Mr. Woolfolk's case, I assume. There's a lot of conversation. And my question to you is, how much time elapsed from the time he stops the car until the time he finds the envelope? Is it only 17 minutes? Or do we have an hour and seven minutes? I'm not clear on your answer. So it was 17 minutes, Your Honor. If I was unclear on the initial point, it's the total play time of the video that was admitted was an hour and 20 minutes. This traffic stop, when the narcotics were found, was at the 19 minute 41 mark. And Deputy Collins approaches the vehicle at approximately the two minute mark. So it's about 17 minutes in total when the cannabis is found. Obviously there's body cam footage of traveling and sort of superfluous things, which is part of that hour and 20 minutes. But what we're talking about in your question, the answer is it's about 17 minutes to the discovery of the narcotics. And help me with the timeline, because I think Justice Cates mentioned he decided when he saw the cannabis that he was going to search the vehicle. And that happened relatively early on. Is that accurate? I would say that's correct, Your Honor. It was within about three minutes after immediately approaching, making the observation, having the defendants make the concession that they were transferring the cannabis. And at that point, you do hear a reference at about approximately three minutes that he's going to perform a probable cause search. So this idea of the totality of the circumstances, the only totality of the circumstances is really the existence of accessible cannabis, correct? So at that point, yes, at that moment, but I would push back on that because again, we analyze this not under his subjective intent, but what Wren asked us to do is look at what a reasonable officer would do. And it has to take into account the totality of the information learned throughout the course of the stop, which factors in other issues, which Your Honors have said you'll discuss in the other case, but that necessarily informed a reasonable probable cause analysis. Okay. We've gone past your time, Mr. Rodriguez. Yes. Let me ask my colleagues if they have any further questions. Justice Schorler? Not at this time. Okay. Justice Moore? No. All right. Thank you, Mr. Rodriguez for your arguments. Thank you, Your Honor. Mr. Jalil, do you have a rebuttal? Please, Your Honor. May I proceed? Yes. Thank you. Initially, Redmond is not distinguishable based upon the fact that that case dealt with raw burn cannabis and this case deals with raw cannabis. Redmond specifically states that the smell associated with the legal use and possession of cannabis is not a factor in and of itself. So the distinguishing that the state is trying to make is without merit when Redmond deals with legal use and possession of cannabis. And then these additional facts that the state references, many of those factors were present in Redmond and the Redmond court found them to not be a factor in the totality of the circumstances. In Redmond, there were inconsistent answers that were given as well. And the court said that's not an issue because it doesn't lead to the conclusion to make it any more or less likely that contraband would be found in the vehicle or evidence of a crime would be found in a vehicle. And here, it's exactly the same situation. Just because there's some confusion on where this vehicle is going and what the purpose of the trip was doesn't lead to the conclusion that there was anything illegal in the vehicle. It could have just been that Mr. Woolford was planning a romantic getaway or Ms. Beard was assuming that they were having a romantic getaway. And then as far as the furtive movements that the state references, respectfully, I don't see them in the video. And even if it was the case that was looking down at the floorboard and that gave the deputy in this case extra probable cause to search, the record in this case is that that's not the spot he went to initially. He first goes into the center council. He then goes into her purse. He then tries to get into the glove box and then he goes to the floorboard. If Ms. Beard looking to the floor with some some eureka moment for the police officer, that's the first place he would have looked for. And I would just like to highlight a statement in Redmond. On paragraph 58, the court says, finally, the state points to the Regulations Act, one, prohibition against the use of cannabis in a motor vehicle, and two, prohibition against the possession of cannabis in a motor vehicle unless the cannabis is in a reasonably secure sealed container and reasonably inaccessible while the vehicle is moving. Notably, these are not offenses themselves. Instead, the Control Act establishes the penalty structure for the possession of cannabis. Section 10-5 of the Regulation Act then generally grants immunity from prosecution for the use and possession of cannabis. Section 10-35 then describes conduct for which Section 10-5 does not apply. In other words, if a state can establish that an individual is gauged in conduct described in Section 10-35, i.e. the individual used cannabis in the vehicle or possessed cannabis in an unauthorized container, the individual's possession of cannabis is not immune from the Control Act's general prohibition against the possession of cannabis. That point is directly on point here, Your Honor. So simply put, what would you say? Simply put, I would say that the cannabis in the vehicle did not give probable cause to search. As far as open alcohol goes, you can't have open alcohol in the backseat of your car. That's an open alcohol violation. And to make it that same way with cannabis, the only place you would be able to have cannabis is in your trunk. And that's not what the statute says. The statute doesn't say that this has to be in your trunk, that there's no chance of you ever getting out. You have to pull over. I mean, that's just asking, reading way too much into the statute. It would essentially prohibit legal transportation of cannabis except in a very small set of circumstances. And in today's day and age, most cars don't have trunks. SUVs don't have trunks. Minivans don't have trunks. All of that area would be accessible. So there would be virtually no way to transport cannabis if the state's suggestion is true. So your position is that if it's accessible in the council, it's accessible anywhere in the car then? Anywhere in the car. So if we deem accessibility in the center council, it would be accessible anywhere in the car and then there's by virtue then where to transport cannabis. Is that what I'm hearing you say? Exactly, Your Honor. It would be the same situation as open alcohol. You can't have an open bottle of beer that's sealed up in the back of your car, in the trunk area of your minivan. You can't have an open alcohol back there. That's an open alcohol violation. And the only way this would be allowed is if you go to dispensary, you buy it and it's still in the factory seal. That would be the only way that you could transport cannabis under how the state's version of this would go. You couldn't go to the dispensary, buy cannabis, open up the cannabis to see even if you bought what you thought you bought and then close it back up and drive away from the dispensary because it would be accessible at that point. And unless you had a four-door sedan that had a trunk, that would be the only way you could transport this vehicle. And those cars aren't being sold and bought. They're not on the roads anymore. Every car on the road is an SUV that's open to the whole area of the vehicle that's accessible at that point under an open alcohol container violation. So, if we don't accept your version of events or your definition of accessibility, if this court were not to accept that definition and find that the cannabis was accessible, then you would have a Class A misdemeanor. So, my next question is, what is the scope of the search that can be accomplished, assuming that hypothetical? It would be solely for accessible cannabis. That would be the violation at that point. In your honor's hypothetical, that's the Class A misdemeanor. It wouldn't give him a blanket search to search for contraband. It wouldn't give him probable cause to search for heroin in this vehicle. It wouldn't give him probable cause to search for stolen airline tickets. It would be limited to the violations that he saw, and that would be accessible cannabis and a minor speeding violation. So, use this in terms of open alcohol. If there's an open alcohol container, the presumed crime is that you're drinking while driving, correct? Not necessarily. You don't have to have open alcohol and driving under the influence don't have to go hand in hand. They can only go together, but you can be in violation of an open alcohol container and be sober and not have a DUI violation. But would an open alcohol give rise to probable cause to search a vehicle for something other than open alcohol? No, it wouldn't. If the officer's suspicions and the interactions with him, he doesn't smell alcohol on the person's breath, he doesn't see any signs of impairment, it wouldn't give him grounds to continue. And that's specifically what Redmond says. The Redmond states that the officer in this case certainly had a right to investigate further for the smell of cannabis. But once he discovered that the Redmond wasn't impaired, they say the investigation did not yield inculpatory facts and the quantity of evidence never advanced in the continuum from reasonable suspicion to probable cause to search the vehicle. And that would be the case in your hypothetical, Your Honor, that open alcohol is discovered. He can write a ticket, he can look through the car to see if there's any more alcohol in it. And if there's not, it ends. But it wouldn't allow him to rip open a postal envelope to see if that contained open alcohol in it. For the reason stated here, Your Honors, and the stated in Ms. Beard's briefings, we would respectfully request that Your Honors reverse the trial court's denial of her joint motion to suppress. Okay, thank you both for your arguments as they relate to Ms. Beard. We will take the matter under advisement. Justice Schorler, did you have any other questions? Not at this time. Justice Moore? No. Okay, we will take the matter under advisement and we will issue an order in due course.